## PHILIP HALL v. JAMES C. DAVIS, AS AGENT OF THE PRESIDENT UNDER THE TRANSPORTATION ACT.[1]

July 22, 1921.

No. 22,425.

**Escape of fire from locomotive — finding of negligence sustained.**
The evidence examined and *held* to sustain the findings.

Action transferred to the district court for St. Louis county to recover $7,460 for destruction of property by fire caused by locomotives of the Great Northern Railway Company. The case was tried with others before Cant, Hughes, Dancer, Fesler and Freeman, sitting en banc. The court, Cant, J., made findings and as conclusions of law ordered judgment in favor of plaintiff for $7,400. Defendant's motion to amend the findings was denied. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*M. L. Countryman* and *Baldwin, Baldwin, Holmes & Mayall,* for appellant.

*Arnold & Arnold, J. E. Diesen* and *Cox & Michaelson,* for respondent.

HOLT, J.

Action against the director general of railroads for negligently setting and allowing a fire to escape, while in control of the branch of the Great Northern Railroad running from Cloquet northwesterly to Floodwood, Minnesota, the fire so set having reached and consumed plaintiff's property in the city of Cloquet, on the evening of October 12, 1918.

[1]Reported in 184 N. W. 25.

This action and 277 other actions of like nature were, by stipulation, consolidated and tried to five judges, without a jury, to determine the issue of liability, and, if defendant was held liable, the amount of damages was thereafter to be ascertained in each case before any one judge. There was a determination that the director general's negligence caused the destruction of the property of the various plaintiffs, and the loss in the case of this plaintiff was thereafter fixed. The director general moved for amended findings or a new trial. The motion was denied, and this appeal followed.

Mile post 62, on the railroad mentioned, is a few rods south of the bed of St. Louis river, 3½ miles east of the station Paupores. The river runs nearly east from the station to mile post 56, a mile east of Brookston; thence about southeasterly to mile post 52, near Brevator; thence northeasterly to mile post 50; thence southeasterly to mile post 47; thence southwesterly to mile post 45; thence a little east of south entering the northwest corner of the city limits of Cloquet between mile posts 43 and 42 and continuing southeasterly to a point about equidistant from the north and south boundaries of the city; thence directly east through the center of the city limits. The railroad follows the bank of the river closely all the way. A short distance from the river banks, hills rise on either side, more or less abruptly, to various heights from 100 to upwards of 200 feet. From the description of the course of the river, it can be seen that Cloquet is almost due southeast from mile post 62. The distance between the two points is about 20 miles by rail and about 13 miles by a direct line. The territory south of the river, extending for 20 or more miles west of Cloquet, is quite broken with hills, valleys, swamps, lakes and brooks. In some parts are quite a few settlers with small clearings. Nearly all is cut-over land. The season prior to October 12, 1918, had been unusually dry. In the region mentioned fires had run. Efforts to extinguish and control these fires had been made with more or less success. The record leaves the impression that in stumps and bogs there may have been smolderings on the twelfth of October.

The issue, as made by the pleadings, was that a locomotive passing mile post 62 on October 10, 1918, set a fire, which communicated with

and ignited a quantity of forest products piled at a spur track at that place; that effective means to extinguish this fire were not taken; and, when on the twelfth a strong wind arose, the whole stock there piled burned with great intensity, the flames spreading to adjacent ground and running at a fearful speed with the wind, which was claimed to then come from the northwest and heading towards Cloquet. The director general contended that the fire at mile post 62 was not of a railroad origin, and, particularly, that the fire which came to the city was of unknown origin, starting far south of the railroad right of way; and, further, that the wind was almost due west or not more than 20 degrees north of west, so that it was impossible for a fire from mile post 62, or for any fire on its right of way west of Brevator, to travel and spread enough to the south, in the gale then blowing almost due east, so as to reach Cloquet.

The court found, in substance, that the director general, while he operated said railroad, allowed combustible material to accumulate on and along the right of way between mile posts 52 and 64, and permitted large quantities of forest products to be stored at mile post 62; that no men were employed to patrol that part of the right of way to watch for and extinguish fires thereon; that while so operating the road, under the conditions mentioned, and on October 10, 1918, a locomotive engine passing mile post 62 set fire to the dry material in the immediate vicinity thereof; that the director general negligently failed to extinguish such fire, which, on the twelfth of October, caused all of the material so stored to be consumed, and, spreading therefrom to the lands adjacent and over and across said lands to the premises of plantiff in Cloquet, consumed the property described in the complaint.

No question is made of the damages awarded. And, with the commendable candor characteristic of defendant's able counsel, concessions were made, on the oral argument, that narrow the appeal down to the one question whether the evidence sustains the conclusions of the four judges, who concurred in the finding, that the first fire to reach and cause the conflagration in Cloquet was the one from mile post 62. The concessions alluded to relate to the conclusions of the court, as disclosed by the memoranda attached to the findings and to the order denying

a new trial, that the director general's negligence set the fire at mile post 62 on the tenth which burst into a great and destructive conflagration on the twelfth, and that the gale during the afternoon and evening of the last named day came from the northwest. Counsel do not concede that the court ought to have reached such conclusions, but that, having done so, this court, under the well settled rules guiding it, cannot hold that the conclusions are without adequate support, or that the court erred in refusing to make findings of contrary purport as requested by appellant.

We think also that appellant is on this appeal entitled to the benefit of the conclusion expressed in the memoranda that the evidence, though reasonably clear, was insufficient to establish that such fire as was in section 6 of town 50, range 17, and sections 1 and 2 of town 50, range 18, that evening never reached Cloquet, or mingled with the one that came from mile post 62. But the trial court was clear that the last mentioned fire reached the city first, and that the fires which originated more southerly and westerly, whether of unknown or railroad origin, came later and did not contribute to the destruction of the city. Defendant's counsel earnestly maintains that the court was demonstrably wrong in this. We think not. The nature and direction of the wind as the fire swept on, and the testimony of witnesses in the path of the most northerly as in the ones to the south thereof, seem to establish with reasonable certainty that the north fire, the one from mile post 62, came to the city first. From a comparison of the time so given by these various witnesses and the positions they occupied in the burned territory when the main flames passed them, it rather persuasively appears that when the fire, so destructive of life and property, raged through sections 1 and 2, town 50, range 18, and section 7, town 50, range 17, the north fire had already entered the upper planer or lumber district of the city.

Of course we realize that estimates of time under the stress and excitement attending a calamity of this nature are not very accurate; also that timepieces in country districts are seldom correct. It is also true that the speed of fires varies exceedingly with the nature of the territory over which they pass, and the amount and kind of material upon which

the flames feed. When the wind is so strong as on the day in question, fire brands are carried to great distances and the further progress depends upon the stuff into which the brands fall and whether the wind has full sweep over it. The experienced and painstaking judges who for five weeks gave these and other matters, too numerous to here call attention to, careful consideration, were satisfied that the fire from mile post 62 reached Cloquet first. One of the judges was alone in the opinion that plaintiff had not sustained the burden of establishing beyond speculation and conjecture that any fire, originating from the railroad operated by the director general, materially contributed to the destruction of plaintiff's property. We think the findings made by the court are amply sustained.

The court evidently refrained purposely from expressing conclusions as to the origin and course of the fire which started between mile posts 67 and 68, and as to whether the one from mile post 62 separated near the dam on Stony Brook, in section 16, town 50, range 18, one part passing to the north and east of Cress lakes and the other to the south of those lakes, since such conclusions might relate to the destruction of property not owned by any of the plaintiffs in the suits here involved.

It is not practical to here reproduce the maps used at the trial, but in those maps and other exhibits are indications by way of areas not burned, the shape of such areas, the contour of the ground, the location of swamps, lakes and creeks, the open fields and meadows, the light and hard burned parts which fortify not only the wind directions in accordance with the conclusions of the trial court, but also the findings of the majority that the fire negligently allowed to escape from the locomotive operated by the director general at mile post 62 spread to and caused the destruction of the property involved in the actions tried.

The evidence, in our opinion, sustains the findings.

Affirmed.