## J. E. DIESEN v. HANFORD F. COX AND ANOTHER.[1]

November 6, 1931.

No. 28,551.

[1]Reported in 238 N. W. 785.

*Fryberger, Fulton & Boyle,* for appellant.

*Abbott, MacPherran, Dancer, Gilbert & Doan* and *Theodore Hollister,* for respondents.

HILTON, J.

The parties to this action are attorneys practicing law at Cloquet, Minnesota. Defendants are copartners. This action, commenced in May, 1928, was for an accounting on an alleged verbal copartnership agreement claimed to have been made between plaintiff and the defendants in 1919. It was tried to the court without a jury in December, 1928, and lasted many days.

Findings of fact and conclusions of law, all favorable to defendants, were made on July 23, 1930. In November of that year plaintiff made a motion to amend the findings of fact and conclusions of law and an alternative motion for a new trial. On February 10, 1931, an order denying plaintiff's motions in all respects, except as to the amending of one finding on an immaterial matter, was filed. This appeal is taken from the order denying a new trial.

In October, 1918, a disastrous conflagration occurred in northeastern Minnesota; scores of lives were lost and property damage sustained running into many millions of dollars. Facts relative to the fire may be found in Hall v. Davis, 150 Minn. 35, 184 N. W. 25; McCool v. Davis, 158 Minn. 146, 197 N. W. 93; McCool v. Davis, 162 Minn. 281, 202 N. W. 900. The liability of the United States Railway Administration for the consequences of the fire was established in 1920-1921 by decisions of Minnesota courts.

Plaintiff predicates his action on the claim that defendants received and retained certain secret profits growing out of the

handling of litigation arising from the fire losses and that he is entitled to a portion thereof because of the partnership agreement.

N. B. Arnold and J. B. Arnold, constituting the firm of Arnold & Arnold, O. J. Larson, and H. T. Abbott were practicing lawyers at Duluth. Many of the losses occasioned by the fire were partially covered by insurance, which was thereafter paid to the insured by companies represented by Bates, Hicks & Felonie, Chicago attorneys.

In the fall of 1918 plaintiff made some investigations to determine the cause and source of the fire. In February and March, 1919, many persons (principally residents of Cloquet) who had suffered loss from the fire formed an unincorporated association (later incorporated) under the name of the "Cloquet Fire Reimbursement Association." Its purpose was to co-operate in obtaining proof as to the cause of the fire, fixing liability therefor, recovering damages from those liable, and raising funds for said purpose. Plaintiff and defendant Michaelson were consulted by and advised those instrumental in forming the association, and Michaelson was employed as its clerk or secretary for a time at a fixed salary. The association employed plaintiff and Michaelson to do investigation work; each was to be paid $15 per day for time actually spent in the field.

It was determined to prosecute actions to recover damages for losses sustained by members of the association. An arrangement entered into between its directors, plaintiff, and defendants provided that 25 per cent of the amounts recovered in each case should be retained as attorneys' fees. It was agreed by the parties hereto that the 25 per cent fees should be divided—10 per cent to plaintiff, 10 per cent to defendants, and 5 per cent to one Wiley (not an attorney).

One finding of the court relative to the partnership agreement, the correctness of which is practically conceded by appellant, is:

"That plaintiff and defendants should co-operate and make available to each other their knowledge and information concerning the subject matter of said litigation and use their joint efforts in the

prosecution of such actions as they or either of them might commence; that in making said joint arrangement, no other claims or cases were in contemplation of the parties than those of members of said Reimbursement Association, who, through membership dues were creating the funds used in procuring data concerning said fire."

It was later decided by the directors of the association, plaintiff, and defendants that additional attorneys should be retained to assist in the litigation. A meeting of the directors was held on July 31, 1919, attended by plaintiff, defendants, one of the Arnold firm, and a Mr. Felonie of Chicago, a member of the law firm of Bates, Hicks & Felonie. Whether or not Felonie then promised to pay part of the expenses and failed to do so is not important.

Arnold & Arnold were already associated with the Bates firm as attorneys for its insurance companies and were also attorneys for a number of fire claimants in territory outside of the city of Cloquet whose losses were thought to have been caused by the same fire or by fires whose origin was due to the same causes. The Arnolds had made considerable investigation as to the cause and origin of the fires.

At the meeting an arrangement was made between the directors of the association, plaintiff, defendants, and Arnold & Arnold as follows: Arnold & Arnold were retained as attorneys to be associated with plaintiff and defendants in the prosecution of claims of members of the association, and 25 per cent of the net amount recovered by each claimant should be paid to all of said attorneys jointly as attorneys' fees. The claims, when made, or the actions, when commenced, should include the total amount of the loss suffered by each claimant, including the amount of insurance paid to such claimant; but plaintiff and defendants should not represent fire insurance companies in the recovery of the amounts to which such companies might be entitled by reason of losses paid to insured claimants. Arnold & Arnold could represent said companies. The percentage of recovery which said attorneys for claimants should receive as fees was to be computed only on the net amount

payable to the claimant after deduction of the amount payable to the insurer, and not upon any amount payable to the insurer out of the recovery.

After the conclusion of this meeting an agreement and contract was entered into between plaintiff, defendants, and Arnold & Arnold whereby they were to be associated and use their joint efforts, knowledge, and information in the prosecution of claims of and in the representation of clients whom either one of said three parties should have theretofore procured and should thereafter procure or control or directly represent or be responsible to or whose claims should be originally filed with or in the office of either of said three parties, and of such claims as arose through losses in Carlton county and within what was known and referred to by said parties as Great Northern Railway territory; further, that the fees that should become due to or be received by any or all of said parties, as attorneys, for the prosecution of such claims for such clients should be divided as follows: 50 per cent to Arnold & Arnold; 50 per cent to plaintiff and defendants, except however that it was agreed and understood by all of the parties that none of the fees to be received by Arnold & Arnold or other firms representing fire insurance companies should be shared by plaintiff or defendants under said agreement.

It was not understood or agreed that said associates should or had the right to collect from the insurance companies involved or from their attorneys anything by way of expenses of collection, including attorneys' fees, under the subrogation clause of the insurance policies involved or under the statute of the state of Minnesota subrogating the insurer to the right of the insured to collect from third persons for loss occasioned by them, to the extent of insurance paid by such insurer.

Thereafter plaintiff and defendants entered into an agreement between themselves that the 50 per cent of attorneys' fees which they were jointly to receive under the arrangement with Arnold & Arnold should be divided between them as follows: Plaintiff to receive one-half thereof, and defendants together should receive the other half; and whatever amount it became necessary to pay Wiley

should be borne by plaintiff's paying half and defendants the other half. A settlement was made with Wiley for $18,500. Of this amount defendants paid $9,500 and plaintiff $9,000.

It was understood and agreed by and between plaintiff and defendants that the above arrangements and agreements between them and Arnold & Arnold, and between themselves made immediately thereafter, should supersede, take the place of, and annul any and all prior agreements or understandings had between them as to a joint prosecution of claims growing out of said fire or a division of fees that might be earned or received by them on account thereof.

For convenience the plaintiff's contention will be considered under three heads: Larson Fees; Abbott Fees; Insurance Fees.

### LARSON FEES.

The Arnold & Arnold arrangement and agreement with plaintiff and defendants continued through two trials of one of the claimant's actions, each of which resulted in a disagreement of the jury, and until April 2, 1920, when a modification was mutually made by plaintiff, defendants, and Arnold & Arnold as follows: O. J. Larson, an attorney at law who represented a number of clients having claims for damages caused by said fire in Carlton county, was to and did become associated with plaintiff, defendants, and Arnold & Arnold in the prosecution of such claims and actions as were embraced in the arrangement made between plaintiff, defendants, and Arnold & Arnold; also in such claims as Larson then had or might thereafter procure in the same territory.

The total attorneys' fees received from any and all of such actions or claims within the city of Cloquet, outside of 303 cases, were to be divided as follows: Three-tenths to Arnold & Arnold, two-tenths to Larson, and five-tenths to plaintiff and defendants jointly, except that the fees that might be received from the first seven cases commenced and which were then at issue and ready for trial were to be divided as follows: One-third to Arnold & Arnold, one-third to Larson, and one-third to Cox & Michaelson. The fees that might be received from 296 certain other cases were to

be divided according to the original arrangement between plaintiff, defendants, and Arnold & Arnold. Larson thereupon joined with the other attorneys in the work necessarily incident to the prosecution of said claims. Plaintiff was principally instrumental in having Larson associated in the enterprise. Larson's entry therein was against the wishes and desires of Arnold & Arnold.

All of the attorneys took part in a trial which was had by mutual agreement before five judges of the district court of the eleventh judicial district to determine the liability of the United States Railway Administration for damages in 278 cases, arising within the city of Cloquet.

Because of Larson's election as a member of congress, it was mutually agreed between him and his associates that he should not longer continue as an attorney in the cases. There was a dispute as to what compensation he should have for services already performed. Negotiations led to a settlement of the dispute, and it was agreed by all parties that the dispute was one between Larson and Arnold & Arnold. With plaintiff's knowledge and consent, it was agreed by and between Larson and Arnold & Arnold that Larson should receive $15,000 in full settlement and satisfaction of his claims. This sum was to be paid to him by Arnold & Arnold. In consideration of such payment, Larson's interest in the fees reverted to Arnold & Arnold.

A final settlement was made with the railroad administration of all of the fire litigation. Payments soon commenced, and a considerable amount of the money which would otherwise have accrued to Larson under his original agreement was in the hands of defendants as part of the general funds received by them in payment of attorneys' fees to be disbursed among those entitled thereto pursuant to a mutual agreement and understanding which had been arrived at. In the distribution of said funds defendants paid to plaintiff, and he received and accepted, one-ninth of the amount received and paid as attorneys' fees in the seven certain cases before referred to, concerning which it had been agreed at the time of Larson's entry into said association of attorneys that plaintiff was

not to have or receive any of the fees from said seven cases. That one-ninth was taken from the one-third share of defendants.

Immediately after the agreement was made between Arnold & Arnold and Larson as to the $15,000, Arnold & Arnold and Cox & Michaelson entered into a contract by which, for the sum of $10,000 to be paid and which was paid by Cox & Michaelson, Arnold & Arnold sold and transferred to Cox & Michaelson a one-half interest in the Larson fees which had reverted to Arnold & Arnold under the agreement with Larson. Thereafter Cox & Michaelson received said one-half of the interest in the Larson fees and realized thereon approximately $21,000 over and above the $10,000 paid therefor.

Plaintiff's theory that upon Larson's retirement his portion of the fees reverted to the joint associates is without foundation. By that arrangement Arnold & Arnold gave up a portion of their fees to Larson. When he retired it was a matter of adjustment between him and the Arnolds. In a letter written by plaintiff on November 22, 1921, he recognized that fact. It was proper for Arnold & Arnold to make any bargain they wished with Larson and then dispose of the proceeds as they saw fit.

### ABBOTT FEES.

Among those who had suffered losses from the fire in the city of Cloquet were lumber and other allied companies and a number of individuals who were officers, directors or closely affiliated with said companies, who did not place their claims with either plaintiff, defendants, Arnold & Arnold, or O. J. Larson.

After the decision of the five judges had been made in favor of claimants in the late summer or early fall of 1920, said companies and individual claimants employed attorney Abbott, who had for some time theretofore acted as attorney for said companies in other matters, to handle and prosecute their fire claims upon a contingent fee basis. Abbott also had an agreement with Bates, Hicks & Felonie of Chicago, by which he was to be associated with them in looking after the claims of their insurance companies to recover the losses which they had so paid, and he was to receive a

certain percentage of the attorneys' fees that might be received by that firm.

Certain other insurance companies also employed Abbott to represent them in the recollection and recovery of losses paid by them on account of insurance on other property destroyed in Cloquet on a contingent fee basis. When said lumber company and allied claims were placed with Abbott it was not contemplated that actions to recover said claims would ever be tried, but that Abbott's efforts would consist principally of assisting in and trying to bring about a settlement with the railroad administration and establishing the amount of losses of his clients, if recovery could be had.

Because of personal friendship for Cox & Michaelson had by officials or directors of said allied companies, they requested Abbott to give Cox & Michaelson a part of such fees as he might receive on account of said cases. Abbott agreed with them and with Cox & Michaelson to do so, the agreement being that Cox & Michaelson would receive 35 per cent of the fees received by Abbott from the claims of the so-called Cloquet industries and individuals connected therewith or from insurance companies who should send their claims and suits to Abbott's firm; and 40 per cent of the fees that should be received by Abbott from Bates, Hicks & Felonie.

Cox & Michaelson had no contract with the Cloquet companies or individuals or with Bates, Hicks & Felonie or with other insurance companies represented by Abbott, and had no control over them or responsibility in connection therewith. Said cases were not filed with or in the office of Cox & Michaelson, plaintiff, Arnold & Arnold, or O. J. Larson. Cox & Michaelson received from Abbott, through the arrangement above referred to, a sum between $89,000 and $90,000.

Under the arrangement made, neither Cox & Michaelson, plaintiff, Arnold & Arnold, nor O. J. Larson could have procured as their own clients the companies or individuals who became clients of Abbott. Cox & Michaelson were not expected to and did not perform any substantial amount of work in connection with said matters.

The Abbott fees were not of a kind or nature to be covered by the joint adventure as between plaintiff and defendants. That adventure was a limited partnership or enterprise, and the burden was on plaintiff to show that the Abbott fees, were within it. He did not do so. It could never have been in the contemplation of the parties. Their arrangement went no further than to cover cases arising through the association or otherwise for which one or more of the joint associates were responsible.

The division of the fees which either plaintiff or defendants might secure from other attorneys not in the joint enterprise was not expressly mentioned, and there was nothing to indicate that it was in the minds of any of the parties when the arrangement was made, and was not fairly within the implied scope of that arrangement. Plaintiff's own conduct so indicates. He admits that he knew defendants had some fee-sharing arrangement with Abbott; he told Mr. Colter, a representative of the federal government engaged in the settlement of fire cases, that he was not interested with Cox & Michaelson in the Abbott fees; and to the same effect is his affidavit submitted to the five judges.

The court expressed a view in its memorandum that plaintiff knew all the time that defendants intended to claim those fees as their own and that he acquiesced therein, feeling that they did not come within the scope of the joint arrangement with defendants.

The court found that the Cox & Michaelson arrangement with Abbott did not interfere with nor diminish or detract from the service and loyalty which defendants were bound to give to the work of their associates, plaintiff, Arnold & Arnold, and O. J. Larson.

### INSURANCE FEES.

In the latter part of the year 1920 Cox commenced negotiations with Bates, Hicks & Felonie for an arrangement and agreement by which the latter should pay to defendants a portion of the fees which they would receive from their clients for recovering losses paid by such companies on property of certain fire sufferers in Cloquet. Some of those claims were being handled under the joint

arrangement between plaintiff, defendants, and Arnold & Arnold, and some not.

Sometime in 1921 and before any money was paid over by the railroad administration in settlement of said fire claims, Bates, Hicks & Felonie agreed to pay Cox & Michaelson a portion of said fees that might be received by them. In December, 1921, it was agreed that such portion would be a certain percentage of Bates, Hicks & Felonie fees, and that firm did thereafter pay Cox & Michaelson an amount between $39,000 and $40,000. Cox did not inform plaintiff of his efforts to procure said fees nor of the consummation of the arrangement.

Testimony was given by Mr. N. B. Arnold, and by Cox and Michaelson relative to the insurance matters, showing that plaintiff had no interest under the agreement or otherwise in insurance fees.

Also in an affidavit filed and read before the five judges (in the matter of attorneys' fees recovered or claimed) plaintiff stated:

"That affiant [Diesen] has no interest in any claims except the claims filed jointly with the above named attorneys in Carlton County and after the insurance is deducted. That affiant is informed and believes that the attorney fees, which will be received by the above named group of attorneys in the Cloquet cases, will be approximately as follows; without counting the insurance claims which will be received by Arnold & Arnold, and Cox & Michaelson:
* * *."

In a conversation in the latter part of 1921 with Mr. Colter, plaintiff told him that he knew that Cox & Michaelson were getting some of the insurance fees of Bates, Hicks & Felonie and that he was not interested with Cox & Michaelson in the Bates, Hicks & Felonie insurance.

In a letter to the Bates firm on December 26, 1921, he had demanded from them an attorney's fee for himself on all subrogation claims in actions brought by himself and his associate attorneys. His demand was refused. Testifying in the Campbell case in July, 1923, in answer to the question, "What about the insurance cases?"

plaintiff stated, "I haven't had anything to do with them." After testifying in the Campbell case and during that trial, plaintiff ascertained the extent of the fees that Cox & Michaelson had received. He immediately made a demand upon them for an accounting. This was manifestly an afterthought and was contrary to the positions he had previously taken in relation thereto. Nearly five years after that demand the action in this case was started.

In view of the foregoing, together with other facts appearing in the record, and with the reasonable inferences to be drawn therefrom, it is not surprising that the court reached the conclusion that it did on this feature of the case. It could not well have done otherwise.

The accounts of the fees received under the agreement between plaintiff, defendants, and Arnold & Arnold and the disbursements made were correctly kept in a book by defendants; a correct account was also kept by defendants in another book relative to the Larson, Abbott, and insurance fees.

The foregoing constitutes in an abbreviated form and in substance the lengthy and all-inclusive findings of fact made by the trial court.

As conclusions of law the court found:

"That the contract or arrangement between defendants and Arnold & Arnold by which defendants procured a half interest in the Larson fees were not within the scope of any partnership or joint undertaking between plaintiff and defendants and said portion of Larson fees so received by defendants did not belong to such copartnership or joint undertaking; that neither the arrangement between defendants and Abbott nor defendants' connection thereunder with the fire claimants from whom Abbott received fees which were shared with defendants were within the scope of any copartnership or joint undertaking between plaintiff and defendants nor did the fees received by defendants therefrom nor the profits realized by defendants therefrom belong to such copartnership or joint undertaking; nor was the arrangement between defendants and Bates, Hicks & Felonie by which defendants shared in the fees received by Bates, Hicks & Felonie from their clients, nor such work as was

undertaken or done by defendants in connection therewith, within the scope of any copartnership or joint undertaking between plaintiff and defendants nor did said fees nor the profits realized by defendants therefrom belong to such copartnership or joint undertaking; that defendants have not profited from violation of any fiduciary relation with plaintiff or of any duty owing him; and have truly and correctly accounted to plaintiff for all sums due or owing to plaintiff by or from defendants and have paid plaintiff all sums due him except the sum of $277.21; that defendants are entitled to recover from plaintiff their taxable costs and disbursements herein, to be taxed, and that judgment be entered in favor of the party to whom a balance be found due from the other for the amount of such balance."

The only matter here for review is whether or not the findings of fact of the trial court have sufficient support in the evidence. We think they have. The conclusions of law of necessity follow from such findings of fact.

Accompanying the findings of fact and conclusions of law the court filed a memorandum, which logically and forcefully set forth the grounds for the conclusions reached. Following the order denying plaintiff's motion for amended findings and for a new trial there was filed another memorandum, in which the court stated, particularly as regards the insurance claims:

"Reconsideration of this phase of the case and the evidence pertaining thereto has only served to confirm the court's opinion. The fact that it was understood by everyone concerned at the meeting in July, 1919, attended by Mr. Felonie, that neither the fire sufferers, who were insured, nor their attorneys were to have the right to collect expenses of enforcing the claims from either the insurance companies or their attorneys, seems almost too clear for argument. Nothing happened subsequently which would create any rights of the kind now claimed by plaintiff. As stated in the original memorandum, the question seemed largely one of law, whether by reason of the relationship between plaintiff and defendants plaintiff could recover a portion of the money which had been paid defendants by

Bates, Hicks & Felonie under what seemed to be the clearly established facts. Whatever may have been the motive of Bates, Hicks & Felonie in paying the money to defendants and refusing to pay any to plaintiff, it does not appear to the court that it was paid for anything that was within the scope of the partnership arrangement."

In order that the issues in this case may be thoroughly understood it has been necessary to make a rather extended statement of the facts. The case was tried with marked ability on both sides. The record is voluminous. The learned trial court, as the trier of fact, gave it most careful consideration, as evidenced by its findings, conclusions, and memoranda.

It is not necessary to cite authorities stating the rule adhered to, not only in this but in practically all courts, requiring most scrupulous fidelity in fiduciary relationships. That fidelity must be honestly exercised in partnership and joint adventure dealings. The fiduciary relationship between plaintiff and defendants had to do only with the fees covered by the arrangement they entered into. That arrangement had nothing to do with the three fee propositions, the subject of this action. Walker v. Patterson, 166 Minn. 215, 220, 208 N. W. 3, 7.

We have considered the entire record and have been greatly aided by the able briefs and oral arguments of counsel. We are of the opinion that the decision of the trial court was a just and proper one. Its painstaking findings, although not covering every minute detail of the evidence, were a fair, comprehensive, and sufficient statement of the controlling facts. The findings had adequate support in the evidence.

Order affirmed.

OLSEN, J. (dissenting in part).

The three parties, first, plaintiff, J. E. Diesen, second, defendants, Cox & Michaelson, and third, Arnold & Arnold, were associated together as attorneys in collecting a large number of claims, in all some 1,400, for fire damages suffered by settlers and property owners in the Cloquet territory in a great forest fire. A number of

fire insurance companies, which had paid large sums to the property owners for fire losses therein, were interested in the claims, being subrogated by their policy provisions to any recovery or payment obtained to the extent of the amount paid thereunder in any given case. The insurance companies were represented by a firm of Chicago attorneys and by Arnold & Arnold. It was agreed between the three parties first above named that all fees received in prosecuting suits and in settlements made should be divided, one-half to Arnold & Arnold, one-fourth to plaintiff, and one-fourth to Cox & Michaelson. The Chicago attorneys at first refused to allow plaintiff and Cox & Michaelson any share in the fees to be received from the insurance companies. The matters were thereafter handled on the basis that suits were brought and settlements made for the entire fire loss in each case, and out of the recovery the insurance companies, in each case where they had paid losses, received repayment of the insurance paid by them, and the balance recovered went to the property owner. The three parties first above named had an agreement with the property owner that they were to receive as fees 25 per cent of the recovery, and they did receive such fees on the amount coming to each property owner over and above what the insurance companies had coming. In other words, no fees were to be received by them from the property owners on the sums collected for the insurance companies, except by Arnold & Arnold, who received compensation under some agreement with the Chicago attorneys. Large amounts were recovered by suits and settlements. Plaintiff and Cox & Michaelson very reasonably felt that as the money coming to the insurance companies was recovered largely by their efforts and services they should receive some compensation from these companies. Plaintiff made efforts to obtain some allowance for himself and defendants from the companies, but failed. Cox & Michaelson also sought to get fees from them. Finally the Chicago attorneys paid to Cox & Michaelson some $39,000 for compensation or fees for services on behalf of the insurance companies in these fire cases. Arnold & Arnold had received their compensation from the companies and are not here making any claim.

As this $39,000 was compensation for services rendered in the fire cases, which services were rendered as much or more by plaintiff as by .Cox & Michaelson and they were associated together in the matter under an agreement whereby each of them was to receive an equal share of the fees, I am unable to find any good grounds for holding that plaintiff should not recover one-half of the money so received by defendants. Any attempt by technical construction of the various agreements, or otherwise, to arrive at a different conclusion seems to me unjustified. As a matter of fairness and justice the plaintiff should recover on this item.

WILSON, C. J.

I concur in the views of Mr. Justice Olsen.

