LAZARUS BAXTER v. GREAT NORTHERN RAILWAY COMPANY and
Another.

July 1, 1898.

Nos. 11,155—(180).

**Railway—Sectionmen—Acting within Scope of Employment.**
    The fact that railroad sectionmen were engaged during the ordinary hours of labor in performing work ordinarily done by them on the railroad right of way at that time of year (of which courts and juries may take notice, as matters of common knowledge) is sufficient, in the absence of any rebutting evidence, to justify a jury in finding that the sectionmen were acting within the scope of their employment with the railroad company.

**Same—Fire Set on Right of Way—Evidence Insufficient to Identify with Another Fire.**
    Evidence considered, and *held* that it did not sufficiently trace or identify the fire which destroyed plaintiff's property to or with the fire started by defendant's sectionmen on the right of way.

Action in the district court for Mille Lacs county against the Great Northern Railway Company and the Eastern Railway Company of Minnesota to recover $732.50 for the destruction of plaintiff's property by fire, alleged to have been set on defendants' right of way by their sectionmen. The cause was tried by Baxter, J., and a jury, which returned a verdict in plaintiff's favor for $564.16. From an order denying defendants' motion for a new trial, the Great Northern Railway Company appealed. Reversed.

*C. Wellington* and *Charles Keith*, for appellant.

As to the necessity of tracing a fire under the circumstances of this case, we refer to Montague v. Minneapolis, 96 Wis. 633. In all cases where a master is sought to be held liable because of a negligent or wrongful act performed by an employee, the act must be done within the scope of the general employment of the servant. It must be done in the furtherance of the master's business, and for the accomplishment of the object for which the servant is employed, and the burden is upon the respondent to prove the facts which would entitle him to recover. Morier v. St. Paul, M. & M. Ry. Co., 31 Minn. 351.

*D. W. Bruckart*, for respondent.

In the case at bar, the testimony and admissions show clearly that Anderson, who set the fire, was a sectionman in the employ of the Great Northern Railway Company, and, in setting the fire, was doing work usually performed by that class of employees. Appellant is responsible for his act in setting the fire. Mattoon v. Fremont, 6 S. D. 301. It is not lawful for a person to burn grass and stubble on his own land, when, on account of time, manner or circumstances, it appears probable that damage to others will follow. Dewey v. Leonard, 14 Minn. 120 (153); Townley v. Fall Brook, 59 Hun, 616; Brown v. Buffalo, 4 App. Div. 405; Van Ostrand v. Wallkill, 64 Hun, 636; Louisville v. Nitsche, 126 Ind. 229; Brummit v. Furness, 1 Ind. App. 401; Garrett v. Freeman, 50 N. C. 78.

MITCHELL, J.

This is an action to recover damages for the destruction of plaintiff's property by means of a fire alleged to have been negligently set by defendant's sectionmen on its right of way.

There is evidence tending to prove that about the middle of August, 1894, defendant's sectionmen set fire to a pile of old ties and rubbish on its right of way, at a point about 80 rods east of plaintiff's premises, and that this fire escaped from the right of way into a ravine immediately west of it. It is this fire which plaintiff claims spread and finally reached his premises, and destroyed his property, on September 1, the day of the well-remembered Hinckley

fire. This was a timbered country, and everything was exceedingly dry. The trial resulted in a verdict for the plaintiff.

Defendant's counsel raise two points, viz.: First, that there is no evidence that in setting this fire the sectionmen were acting within the scope of their employment; and, second, that the fire which destroyed plaintiff's property is not identified with or traced to the fire started on defendant's right of way.

The fact that defendant's sectionmen were engaged, during the ordinary hours of labor, in performing work usually done by railroad companies through sectionmen at that time of year (a fact of which courts and juries may take notice, as a matter of common knowledge) was sufficient, in the absence of any rebutting evidence, to justify the jury in finding that the sectionmen were acting within the scope of their employment. See Mattoon v. Fremont, 6 S. D. 301, 60 N. W. 69.

Counsel for defendant rely on what is said or implied in Morier v. St. Paul, M. & M. Ry. Co., 31 Minn. 351, 17 N. W. 952; but, on reflection, we are of opinion that we went too far in assuming that there is no presumption that the extinguishment of fires on the railroad right of way, however started, is within the line of duty of sectionmen.

2. But in our opinion the second point is well taken, and is fatal to plaintiff's case. It will be noted that two weeks or more intervened between the setting of the fire on defendant's right of way and the destruction of plaintiff's property. The plaintiff attempted to trace that fire during that time, in a southwesterly direction, down a ravine and through the timber, to some point on section 10 or 11 in the town immediately south of the one in which plaintiff's premises are situated (his land is in section 35), and then back, in a northerly or northeasterly direction, to plaintiff's land, which it reached, if at all, on September 1. According to the evidence, it was not a sweeping, rapidly advancing fire across a prairie, but one that progressed slowly through the timber, sometimes nearly dying out, and then starting up again, according to the changes of the wind and weather.

"Some of it was burning [to use the language of one witness] in

the earth under the roots of the trees, others in old logs, and others in old stumps, and others seemed to be creeping along in the grass."

It is also apparent from the evidence that during this time there were other forest fires smoldering in that part of the country, notably to the west or southwest of plaintiff's premises, for which the defendants were in no way responsible, and that finally, on the memorable 1st of September, 1894, the whole country, including plaintiff's premises, was swept over by a fire which consumed almost everything in its track. It is undisputed that this conflagration was caused, in part at least, by a fire from the west, or, to use the language of some of the witnesses, "from the direction of St. Cloud," which it is claimed united on or near plaintiff's premises with the fire alleged to have been originally set on defendant's right of way.

Under such circumstances it was necessary that the fire should be carefully traced and identified by the evidence from the right of way to plaintiff's premises. The jury were not at liberty to arrive at the result by mere guess or conjecture, but must have had some substantial evidence on which to base their verdict. We have carefully read and studied the evidence, and are clearly of the opinion that there was no sufficient tracing of the fire, either by any one witness or by all the witnesses together, from the point where the sectionmen ignited the pile of ties and rubbish on the right of way, to plaintiff's premises. Neither was it traced by proof of facts and circumstances from which the inference could be legitimately drawn that it was the same fire. The most that can be claimed for the evidence is that it is possible that the fire started on the right of way might have been, in whole or in part, the fire which consumed plaintiff's property. Anything like an analysis of all the evidence would be impracticable and useless. A careful reading of it in the light of a sectional map of the country will, we think, satisfy any one that our conclusion as to its probative force is correct.

It may be remarked, however, that it appeared from their cross-examination that the plaintiff and several of his apparently most important witnesses were not on or near the premises on September 1, and hence that much to which they testified on direct exam-

ination must have been mere conjecture or inference.  See Montague v.  Minneapolis, 96 Wis. 366, 72 N. W. 41.

Counsel for the plaintiff makes the point that the case does not contain all the evidence, because a map used on the trial is not made a part of it.   It is true that the trial judge states in his certificate that the case is signed as containing all the evidence, "with the understanding that the map used upon the trial be attached as a part of the case."   This map was used on the trial for the convenience of counsel, witnesses and jurors, so that the evidence might be better understood.   The witnesses, in their testimony, referred specifically to certain points in or parts of the government survey, according to the government subdivisions, of which the courts take judicial notice; and any sectional map would aid in understanding the evidence as well as the one used on the trial.

Order reversed, and a new trial granted.