H. S. AKIN v. ST. CROIX LUMBER COMPANY.[1]

December 19, 1902.

Nos. 13,228—(168).

### Flooding Land—Negligence.

The evidence offered and received at the trial of this action, brought
to recover damages alleged to have been caused by the negligent man-
agement and operation of certain reservoir dams by defendant, a log-
driving company, whereby plaintiff's land was overflowed and flooded,
*held* to have been sufficient to support the verdict in plaintiff's favor.

### Expert Opinion.

The opinion of a witness, as an expert, as to what produced this
overflow and flooding, should not have been received in evidence. This
was for the jury to determine from all of the facts and circumstances
appearing at the trial.

Action in the district court for Pine county to recover from
defendant $500 damages for the flooding of plaintiff's land, caused
by the alleged negligent operation by defendant of certain dams
maintained by it in Willow and Kettle rivers. The case was tried
before Crosby, J., and a jury, which rendered a verdict in favor of
plaintiff for $200. From an order denying a motion for a new
trial, defendant appealed. Reversed.

*J. N. Searles*, for appellant.

*J. N. Castle*, for respondent.

COLLINS, J.

The defendant, a corporation, had for a number of years prior
to the bringing of this action maintained and operated a system of
reservoir dams on Willow river, in this state; the object being to
raise and accumulate water, and then to use these accumulations
for log-driving purposes. Plaintiff's land is on the river, some
eight miles above one of these dams, and about twenty miles
below another; and he brought this action to recover damages
said to have resulted from flooding of his premises by reason of
the negligent operation and management of these two dams in

[1] Reported in 92 N. W. 537.

the spring of 1901, while defendant was driving a large and unusual quantity of logs. The verdict was for plaintiff.

1. We have made a careful examination of the large amount of evidence contained in the record, and have come to the conclusion that on the facts, as shown, the verdict could and should be upheld. But we do not sustain the contention of plaintiff's counsel that the evidence was overwhelmingly in favor of his client, for our impression is that it preponderated the other way. However, in view of the fact that a new trial must be had for an error of law, we need not state our reasons for this opinion. This disposes of the first assignment of error.

2. We see no error in the ruling of the court to which the second assignment is directed, and no discussion thereof is needed.

3. The third assignment is addressed to certain testimony which the court below allowed to be given by a witness named Armstrong, by profession a civil engineer, who also had considerable knowledge of, and practical experience with, hydraulics. Counsel for plaintiff propounded to this witness certain interrogatories which called for expert opinions, and to these defendant objected; the objection in each case being overruled by the court. The witness had already testified that, if Willow river was clear and free from obstacles of every kind, there would, in all probability, be no overflow of plaintiff's land at any time. The witness was then asked the following question:

"Now, it is in testimony here that on or about the 26th, 27th, or 28th days of June,—it does not matter when, I suppose,—that the water from this river overflowed the garden and grounds of Mr. Akin. You have already testified that it would not have done so in a natural state. I now ask you what, in your judgment, had produced that overflow?"

We are compelled to agree with counsel for the defendant that the witness had not shown himself qualified to answer such a question, and, further, that it assumed a state of facts which had not been established by the evidence. The witness had not testified that there would be no overflow of plaintiff's land in its natural state or condition. His testimony was to this effect if the river had a clear channel; but whether or not there was a clear

channel, or whether or not there were natural obstructions, had not been shown. It did not appear that the witness had examined the river below the plaintiff's land with a view to ascertaining what obstructions there were, and it did not appear that he had ever been above that point. He knew nothing about the conditions, natural or artificial, nothing about the management of the dams, nothing about the overflow complained of, except as he had been told by others.

Nor was the matter one for expert testimony. It was for the jury to determine what produced the overflow or flooding complained of, from the facts presented, and no expert knowledge was necessary or proper. A man of ordinary intelligence, generally, would be just as competent to form opinions and draw inferences from the facts shown concerning the overflow as would this witness. And when the conditions were shown to the jury, they were as competent as the witness to form an opinion as to what produced the overflow. For this reason, an expert opinion was inadmissible. It may be urged that the answer to this question was not directly responsive, but we think, from previous questions and answers, that the witness understood what counsel was aiming at; and, although he did not answer the objectionable question directly; he certainly answered it in a very material manner. In view of the number of questions asked this witness as an expert, and much more confused and involved than was this, and his answers, all of which led up to the question we have quoted, we are of the opinion that it cannot be held that the ruling of the court on this particular question was error without prejudice.

Order reversed and new trial granted.