## ROYAL LARES v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY AND ANOTHER.[1]

### November 21, 1919.

### No. 21,443.

**Railway — fire caused by negligence — uncertainty as to cause — verdict.**
    1. Where the evidence as to the origin of a fire alleged to have been negligently started points with substantially the same force to two or more independent sources, a jury should not be permitted to speculate as to which was in fact responsible.

**Same — no question for jury.**
    2. The evidence is *held* insufficient to require a submission of the question to the jury in this case.

Action in the district court for Washington county to recover $9,250 for the loss of plaintiff's house by fire from one of defendant's locomotives. The case was tried before Searles, J., who at the close of the evi-

[1] Reported in 174 N. W. 834.

dence granted defendant's motion for a directed verdict. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*H. A. Loughran* and *Reuben G. Thoreen*, for appellant.

*Barrows, Stewart & Metcalf*, for respondent.

BROWN, C. J.

This action was brought to recover damages for the destruction of plaintiff's dwelling house by a fire alleged to have been negligently started by defendant railroad company and its engineer. A verdict was directed for defendant on the trial, and plaintiff appealed from an order denying a new trial.

The facts, which are not in substantial dispute, are as follows: The line of defendant's railroad extends from the city of St. Paul in approximately a southerly direction to and beyond the village of St. Paul Park, in Washington county, this state. In addition to its through trains to Chicago and other points, the company operates a local train, referred to in the record as the Burlington Motor, from suburban points to the city of St. Paul, carrying laborers and others whose daily occupations require their presence in the city. The Chicago, Milwaukee & St. Paul Railroad Company also operates its passenger trains into St. Paul, over this line of road from a short distance south of the point here in question. Plaintiff's residence, which was destroyed by fire on the early morning of January 25, 1918, was on the west side of the right of way and some 50 feet from the railroad track. It was occupied by plaintiff with his wife and three children. Plaintiff was a contractor and his place of business was in the city of St. Paul, making daily trips thereto on the Burlington Motor. On the morning of the date above given he arose early, starting a fire in the kitchen stove and also in a heater in another room. He made his own breakfast, and then set the stoves in order and left the house to catch the motor train which left Pullman station at about 7:30 o'clock. His wife and children were then asleep. The train passed the house and he noticed nothing unusual nor anything to indicate that a fire was within or about the same. Less than ten minutes later the house was discovered on fire by neighbors, and it had gained such headway when they reached the scene soon thereafter that entrance

into the building was prevented by fire and smoke. The wife and children were consumed.

It further appears that the building was a frame structure, but covered with iron sheeting, both upon the sides and roof. An inclosure had been made on the northeast corner of the building, with a view of enlarging the kitchen, but without a roof, inside of which the walls of the building proper were covered with tar paper. The ground was covered with some six or more inches of snow at the time, and the thermometer registered 20 degrees below zero. There was no evidence that any sparks escaped from or were scattered by the engine of the train, further than might be assumed from the fact that the train was going upgrade, the engine working hard and emitting volumes of black smoke, as is usual in such conditions. A Chicago, Milwaukee & St. Paul train passed the premises over the Burlington track two or three minutes preceding the motor train. That was a heavy through passenger train from Chicago, and necessarily the engine thereof emitted the same volume of black smoke, and possibly sparks or live cinders, precisely as might have been emitted by the motor train engine. Neighbors were at the burning building within 15 minutes after plaintiff left the same to catch the motor train, and the evidence given by them, and the condition of the fire as they found it, would indicate, at least justify, the inference that it started from within the house and not in the inclosure heretofore described. The wind at the time was from the northwest, with a natural tendency to carry sparks from a passing train away from the building, and the evidence is that the debris from the burnt building was to the southeast.

It is plaintiff's claim that the evidence would have justified the jury in finding that sparks or live cinders were emitted and scattered by the motor train engine, and were carried by the whirling wind into the inclosure referred to, which was without a roof, there ignited the tar paper on the walls of the building proper, from which the fire worked its way into the building and consumed it.

We concur in the view of the trial court that the evidence leaves the origin of the fire wholly to conjecture and speculation, and therefore insufficient to justify a verdict against defendant. In our view of the evidence there is as much basis for charging the cause of the fire to the Milwaukee train, which passed over the line two minutes ahead of the

motor train, and under substantially the same conditions, as to defendant's train. It also seems clear that a fair doubt is presented by the evidence whether the fire was caused by either train, for conditions described by the witnesses first on the scene indicate that it originated within and not from without the building.

In this situation of the evidence the court was right in holding as a matter of law that plaintiff had failed to establish his alleged cause of action; the evidence as a whole leaves the origin of the fire in such doubt and uncertainty that a verdict in plaintiff's favor could not be sustained. Minneapolis Sash & Door Co. v. Great Northern Ry. Co. 83 Minn. 370, 375, 86 N. W. 451; Swenson v. Erlandson, 86 Minn. 263, 90 N. W. 534; Brennan Lumber Co. v. Great Northern Ry. Co. 80 Minn. 205, 83 N. W. 137. While in cases of this kind circumstantial evidence is sufficient to take an issue of the kind to the jury, yet, where the evidence points with substantially the same force to two or more independent sources as the origin of the fire, a jury should not be permitted to speculate as to which was in fact responsible.

Order affirmed.