EDWARD J. SILVER v. G. P. HARBISON AND OTHERS.[1]

October 4, 1929.

No. 27,085.

Theodore Hollister and Lathers & Hoag, for appellant.

Warren E. Greene, Warner E. Whipple and George W. Atmore, Jr. for respondents Harbison, Rheinberger and Ryan.

Fryberger, Fulton & Boyle, for respondent McCabe.

Michael S. Bright, for respondent Tramblay.

DIBELL, J.

Action to recover damages alleged to have been caused by a fire set by the defendants. At the close of the testimony the court directed a verdict for the defendants. The plaintiff appeals from an order denying his motion for a new trial.

The plaintiff is the owner of land in Lake county. It was burned over on May 16, 1926, and his buildings were destroyed. On May 14 the defendants, residents of Duluth, went on a fishing trip to a point on Manitou river, a few miles west of the plaintiff's land. They left their autos a mile or so away, perhaps farther than that, for their estimates of distance seem uncertain, carried their packs and camped near the river in an old gravel pit or cut. They pitched their tent and cooked their supper. The next morning they made a

[1]Reported in 226 N. W. 932.

fire in the same place and cooked their breakfast. They claim that the fire was put out before they left camp. One of them says that some dry chips were thrown on the fire to do some further cooking, but that the fire did not freshen and that he then threw the dishwater on it and got from the river two pails of water, probably two-quart pails; and poured on it. Not all can speak directly of their own knowledge. But it could be found that very great care was exercised, and it could be found that the fire was extinguished completely.

The plaintiff claims that the fire smouldered and started up later in the day as the wind freshened and finally reached his property. There is no question but that about two o'clock in the afternoon a fire burned the camp and on the 16th reached the plaintiff's land. The real question is whether the evidence makes it a question for the jury whether this fire had its origin in the camp fire of the defendants.

There is no question as to the principle of law involved. It was for the plaintiff to prove that the fire which destroyed his property originated in the camp fire. The defendants were not required to explain its origin. The fact was to be established by proof and not by speculation or conjecture. The proof need not be direct but must be such as to justify an inference of fact. McCool v. Davis, 158 Minn. 146, 197 N. W. 93; Carr v. Davis, 159 Minn. 485, 199 N. W. 237; Lares v. C. B. & Q. R. Co. 144 Minn. 170, 174 N. W. 834; 5 Dunnell, Minn. Dig. (2 ed.) § 8211, and cases cited.

The ground immediately where the fire was built was bare. A log extended over the edge of the pit to a point a few feet from the fire. The evidence would justify a finding that there was inflammable refuse at the edge of the pit and there was some evidence the log was decayed so that a fire might travel it. In fact it was on fire in the afternoon. The land had been burned over from time to time. Everything was dry. There had been no rain for weeks or perhaps none since the snow left. One of the defendants assented to the suggestion of counsel that if a match were touched everything would burn like tinder. Conditions were ripe for a forest fire.

The defendants started fishing the river in the morning. Along about one-thirty or two in the afternoon they noticed smoke in the direction of the camp. One of them described it as "a big cloud in the sky—a big cloud like a big mushroom." Another described it as resembling a cyclone, "like a small cyclone," indicating that it was funnel-shaped. At about the same time the officer in charge of the state forest service observed the fire, and though 20 miles away was able to locate it. There were no other fires. The defendants abandoned their fishing and went to the camp. The log was then burned seven or eight feet from the edge of the pit at the east. The country to the east was on fire, and the fire had gone up the river in apparently a curve some 600 or 800 feet and a less distance to the south. The camp belongings and equipment of the defendants were burned.

We are of the view that from the direction of the wind and the nature of the fire about the camp the jury could infer without indulging in forbidden speculation or conjecture that the fire started in the camp. In the morning there was a fire there for which they were responsible. The defendants make a strong case for the jury upon their claim that it was extinguished; but we cannot hold that it was such as to permit a binding instruction. The town fire warden, sent to the camp by the state forest service officer, talked with the defendants when he reached their camp. They were much concerned about the fire. He suggested that likely they would be held liable. A tentative plan was then arranged whereby one of them was to go to the county seat and plead guilty under an assumed name and pay a fine. They matched coins to see who would assume the burden and one was selected. A fictitious name was chosen. All agree that this plan was adopted. It was not carried out. All this may not be of much force, but it was something in the nature of an admission that the jury could consider. It would prevent the application of the rule, especially in view of the fact that the testimony of the witnesses was greatly by way of conclusion, that undisputed and uncontradicted testimony that the morning fire was extinguished must be taken to be true within the holding in Second

Nat. Bank v. Donald, 56 Minn. 491, 58 N. W. 269, and in the many cases cited in O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430. It could be taken by the jury somewhat in disparagement of defendants' claim that they left no smouldering fire at the camp. And somewhat of like effect were their protestations that settlers damaged by the fire would be compensated.

The state forestry officer says that between two and three in the afternoon he saw a car and a tent on the river a mile and a half or two miles south of the camp of the defendants. It does not seem that he attached much importance to it. There was no fire near. No men were seen. No one was seen along the river that day except the defendants. At four o'clock the auto had left. It is suggested that the occupants of the auto may have had something to do with setting the fire. This is conjecture. At most the effect of the testimony was for the jury as suggestive of the existence of other possible causes than the camp fire. The same is true of various suggestions as to the possible origin of the fire.

Whether the question of the origin of the fire was one for the jury gives considerable trouble. It is a close one. From the best view we are able to get of the situation it was. If the fire was not put out it had only 15 feet to go before it would reach very inflammable material. When the wind freshened, if embers were left, this distance would be easily traversed. The presence of the log, which might be found punky and inviting a fire, extending from the rim of the pit or cut to the fire, is not controlling though a factor of some importance in the case. To those familiar with the progress of forest fires in such a cutover district in time of great drought, as illustrated for instance by Hall v. Davis, 150 Minn. 35, 184 N. W. 25, and McCool v. Davis, 162 Minn. 281, 202 N. W. 900, it is easy to understand how a camp fire might pass an intervening space of 15 feet, containing nothing inflammable, and reach the inflammable material beyond, though there was no log aiding its passing. Under the facts stated the law does not pronounce in favor of the defendants but leaves the issue to the determination of a jury cautiously guided by the trial court and with the result of its work subject to revision.

The question of negligence is not argued as one of importance. Whether there was negligence under the common law rule, or an equivalent liability under the statute, 1 Mason, 1927, § 4031-1 et seq. is open upon a new trial.

Order reversed.