PAUL T. ERICKSON v. J. H. STRICKLER.

90 N. W. (2d) 232.

May 9, 1958—No. 37,274.

*Carl E. Erickson,* for appellant.
*Ryan, Ryan & Ebert,* for respondent.

MURPHY, JUSTICE.

This is an action for damages resulting from the destruction of the plaintiff's lakeshore house on October 16, 1953, by a fire alleged to have been started by the defendant on the defendant's property, which adjoined that of the plaintiff. In the first trial of the action the jury awarded plaintiff a verdict, but the trial court granted defendant's motion for a new trial. At the second trial, the court directed a verdict for defendant after the plaintiff had presented his evidence. Plaintiff caused a judgment of dismissal to be entered and appeals therefrom.

The plaintiff owns a strip of land along the south shore of Upper

Long Lake in Crow Wing County. His property extends about 600 feet along the shore and, at its widest point, about 75 feet from the shore to the south boundary. His house was situated at this widest point, approximately 20 feet from the south boundary. The first story of the house was made of concrete, the upper part of wood. It was built into a fairly steep hill, so that on the south side of the house the wooden upper part of the house was about four feet from the ground. It is important to note that this hill forms a sort of V with the south wall of the house. The hill extends some 40 feet beyond the south wall of the plaintiff's house, so that its ridge is on the defendant's property, an extensive piece of land to the south and east. During the fall of 1953 both parties were living in Brainerd. The plaintiff visited his house on weekends, while the defendant had no dwelling on his property. The property of both plaintiff and defendant was covered with a dry leaf mold, or humus, from 1 to 6 inches thick. In late September 1953, the defendant intended to subdivide his property. With this in mind he and his wife began clearing his land in preparation for the construction of a road in an area southeast of plaintiff's property and apparently quite close to the ridge of the hill. They gathered the brush they had cut into a number of piles 4 feet in diameter and 6 to 8 inches high. One of these piles was as near as 50 feet from the plaintiff's house. On October 2 the defendant took out a fire permit pursuant to M. S. A. 88.17. When called as an adverse witness, he testified that on Monday, October 5, his wife had burned a brush pile located about 350 feet from the plaintiff's house. The particular property on which this fire was started was not included in the permit. He said that after the fire had burned for about 30 minutes he decided it was dangerous under the dry conditions and put it out by pouring water from a gallon thermos jug and raking it. He did not take any other safety measures, but he testified that he was sure at the time that the fire was extinguished. The defendant admits that after this he was at work on the premises on October 6, 7, 8, 9, 10, 11, 14, and 15 but denies having started any other fires.

On Sunday, October 11, the plaintiff and his wife, according to their testimony, observed four ash spots in the cleared area, which were of approximately the same diameter as the brush piles. At that time they

did not notice that the ash spots were smoking or smoldering. Several witnesses testified they saw no smoke coming from either defendant's or plaintiff's property between October 5 and October 16. In the afternoon or early evening of Friday, October 16, the plaintiff's house was destroyed by fire. A large area on defendant's land to the south and east of plaintiff's house was also burned, including the area in which most of the brush had been piled. Other pertinent evidence will be discussed in the opinion.

In directing the verdict for the defendant, the trial court was of the view that any verdict for the plaintiff would necessarily rest upon conjecture and speculation. In reviewing the plaintiff's assignment of error as to the directed verdict, it is necessary to keep in mind that a motion for a directed verdict accepts the view of the evidence most favorable to the adverse party and admits the credibility, except in extreme cases, of the evidence in his favor and all reasonable inferences to be drawn therefrom. The motion for a directed verdict should be granted only in those unequivocal cases where in the light of the evidence as a whole it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where it would be contrary to the law applicable to the case. Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637; Kolatz v. Kelly, 244 Minn. 163, 69 N. W. (2d) 649.

It is the defendant's contention that the plaintiff failed by his evidence to trace and identify a fire started by defendant as one resulting in the damage to the plaintiff's property, Baxter v. G. N. Ry. Co. 73 Minn. 189, 75 N. W. 1114, and that the evidence adduced in this case provides nothing more than a foundation for "a random guess or speculation." Swenson v. Erlandson, 86 Minn. 263, 90 N. W. 534; McCool v. Davis, 158 Minn. 146, 155, 197 N. W. 93, 96; Silver v. Harbison, 178 Minn. 271, 226 N. W. 932; Carmody v. Aho, 251 Minn. 19, 86 N. W. (2d) 692.

It must be conceded that if the plaintiff proved only that the defendant started a fire on his property on October 5, eleven days before the plaintiff's house was destroyed, without evidence from which a jury might reasonably draw an inference of negligence which was the proximate

cause of the damage, a verdict in favor of the plaintiff would clearly rest, as the trial court ruled, on guess, speculation, and conjecture. Village of Plummer v. Anchor Cas. Co. 240 Minn. 355, 61 N. W. (2d) 225; Bauer v. Miller Motor Co. 197 Minn. 352, 267 N. W. 206. The plaintiff points out, however, that the fire occurred in a partially isolated forest area. There were no eyewitnesses to the origin and progress of the fire, and, since direct evidence was difficult to obtain, it is necessary to rely upon circumstantial evidence. We are, therefore, called upon to determine here whether or not the circumstantial evidence submitted by the plaintiff was such as to justify inferences as to the issuable facts from which reasonable minds might conclude that a fire or fires started by the defendant were the proximate cause of plaintiff's damage. If the circumstantial evidence furnishes a reasonable basis for inferences by the jury of the ultimate fact that the alleged acts of the defendant caused the injury complained of, it is sufficient proof of causal connection to sustain a verdict. In Knuth v. Murphy, 237 Minn. 225, 54 N. W. (2d) 771, we held that circumstantial evidence which justifies inferences in support of the verdict upon the issue of negligence, even in the face of other conflicting inferences, is adequate to sustain a verdict if the supporting inferences could reasonably be found to outweigh and preponderate over the other conflicting inferences and theories. Sherman v. Minnesota Mutual Life Ins. Co. 191 Minn. 607, 255 N. W. 113; Paine v. Gamble Stores, Inc. 202 Minn. 462, 279 N. W. 257, 116 A. L. R. 407; 7 Dunnell, Dig. (3 ed.) § 3234.

■ Before undertaking a discussion of the law which we understand should apply to the facts shown by the record, it should be observed that the issues as presented by the briefs center upon the question of whether or not there was proof to establish a physical connection between the acts of the defendant and the ultimate damage, without reference to the element of negligence involved. The complaint charges the defendant with having negligently set fire to brush, with having negligently failed to extinguish the fire, and with having negligently allowed the fire to spread. In his brief, however, plaintiff adopts as a basis of liability not only the common-law theory of negligence but the additional theory that the evidence supports liability under the standard

set forth in the Forestry Act, M. S. A. c. 88. If the plaintiff's claim with reference to the application of c. 88 is correct, it could apply only in the event the jury found that the claimed violation *caused* the destruction of the plaintiff's home. Since the trial court directed a verdict, the application and construction of the Forestry Act was never reached. Under the circumstances we are of the view that it is not within the scope of appellate review to discuss the construction or application of that act without a prior holding by the trial court. Mattfeld v. Nester, 226 Minn. 106, 124, 32 N. W. (2d) 291, 304, 3 A. L. R. (2d) 909; 1 Dunnell, Dig. (3 ed.) § 384. We have, accordingly, reviewed the record with a view of determining whether or not it contains enough evidence to support a verdict under either theory and do not determine which measure of liability supplies.

■ There are a number of important facts established by the plaintiff's evidence, as it appears from the record, which must be recognized. To begin with: (1) There were no other fires in the area at or about the time plaintiff's house was destroyed. (2) Several witnesses who were situated at various points along the lakeshore on the afternoon of the fire testified that at times ranging from 3 p. m. to 4:30 p. m. they saw smoke rising from the area of the defendant's property to the south and east of the plaintiff's house. (3) On the afternoon of the day in question there was a prevailing wind from south to north of up to 12 m. p. h. All of the existing conditions, growing out of a warm, dry autumn, made the area ripe for a forest fire. The evidence disclosed that during the months of September and October the amount of rainfall in the area was negligible. The weather was unusually warm, the records indicating that on October 2 there was a maximum temperature of 90° and on October 3 the maximum was 84°. The maximums on October 15 and 16 were 78° and 82°, respectively. According to "danger meter" readings maintained by the Division of Forestry of the Department of Conservation in the Brainerd area, fire hazard conditions were at various hours characterized as "Very high, fires will start from glowing cigarette butt or sparks, spread rapidly and tend to crown generally, spot fires are common" to the extreme classification described as "Explosive conditions, fire starting regularly from sparks, burn

furiously and tend to crown and spot generally." (4) Witnesses, who were among the first to reach the property after the fire started, testified that when they arrived only the south side of the house was burning, and they saw the fire spread through the house. Two of them testified that when they arrived a considerable portion of the defendant's land, including the area in which the defendant had been piling brush, had already burned.[1] (5) The plaintiff testified that lumber had been piled in the V formed by the house and the hill. This was confirmed by a witness who saw the lumber piled against the foundation of the house. (6) The plaintiff submitted the testimony of a number of witnesses employed by governmental agencies, who had examined the premises subsequent to the fire and who were qualified to testify from training and experience with reference to existing conditions as they related to the possible spread of fire in the area.

These witnesses included Martin A. Nelson, a deputy state fire marshal of 20 years' experience in fire prevention work and in the investigation of the causes of fires; Charles Homer Whiting of the Division of Forestry, Department of Conservation, in charge of activities within the Division of Forestry for the Brainerd fire prevention area; Arthur J. Ward, assistant area supervisor of the Division of Forestry, whose work consisted primarily in the prevention and suppression of fire; George W. Lucas, fire chief and electrical inspector of the city of Brainerd; and Quentin R. Stropp, a forest ranger. From the testimony of these witnesses it appears that the burned-over area, after the fire was extinguished, extended over the defendant's property from 250 to 300 feet south and from 500 to 600 feet east of the plaintiff's house. Two of these witnesses were definitely of the opinion that the fire which destroyed the house started from the outside. These witnesses further pointed out that in that particular area the humus or leaf mold on the forest floor was dry and from 5 to 6 inches in depth. They stated that once a fire is started under such conditions it may be held in the humus

---

[1]The testimony of Mr. Bennington, though quite unclear and incomplete, might be interpreted to contradict the testimony of Hillman and Caughey on this crucial point. If so, the conflict of the testimony must be resolved by the jury.

indefinitely and may burn for weeks or possibly months, depending upon the depth of the mold or humus and weather and wind conditions. They agreed that a fire starting in such humus may travel underground without any surface indication of burning and that a fire spreading beneath the surface in the humus may come to the surface at intervals and may travel on the ground or by sparks through the air. The statements with reference to the propensity of the humus to retain fire are confirmed by the testimony of two witnesses who were on the premises subsequent to the fire on October 18 and 25. One of these witnesses dug holes in the ground, and, in spite of the fact that the fire had apparently been extinguished on October 16 and a fairly heavy rain had fallen that evening, it was found that fire was still retained in the ground. The witness Ward gave as his opinion with reference to the fire started by the defendant on October 5 that, considering its size, the length of time it had burned, and the prevailing conditions, the precautions taken by the defendant would not be adequate to extinguish it.

We are of the view that at the time the motion for a directed verdict was made, the record contained evidence from which the jury might reasonably infer that the fire originated on the defendant's land rather than on the plaintiff's property; that without further explanation on the part of the defendant the evidence supported inferences that the fire started by the defendant on October 5 may not have been adequately extinguished; that from the evidence with relation to ash spots observed by the plaintiff and his wife on October 11, the jury might draw inferences that the defendant, who had been engaged in a project of clearing and burning brush on this property at various times before and after October 11, had knowledge of the existence of fire upon his premises which might create a hazard to others, State v. Phillips, 176 Minn. 472, 223 N. W. 912; Farrell v. Minneapolis & R. R. Ry. Co. 121 Minn. 357, 141 N. W. 491, 451 L.R.A. (N.S.) 215; 22 Am. Jur., Fires, § 13; and in light of the prevailing conditions the jury could draw inferences as to whether or not the fire could have traveled to the plaintiff's property either through the humus or by sparks from embers awakened by the wind.

Plaintiff emphasizes that, when the defendant was first interviewed

the day after the fire by Mr. Whiting of the Division of Forestry, he asserted that he had done no burning on his property. Later he admitted having one fire on October 5. From this the plaintiff argues that the jury might reasonably question the defendant's credibility as to the number of fires he actually started on the days he admits having been on the premises; namely, October 5, 6, 7, 8, 9, 10, 12, 14, and 15. While this evidence in itself is not compelling, nevertheless, it bears on the credibility of the defendant and may be considered by the jury together with other competent evidence bearing on the ultimate issue of whether the fire or fires were started by the defendant.

In determining the correctness of a directed verdict, an examination of other cases is not particularly helpful, since each decision rests upon its own particular facts. The defendant relies on McCool v. Davis, *supra*. That was a fire case in which a new trial was granted after a verdict for the plaintiff, for the reason that the evidence failed to show any possibility that the fire (158 Minn. 153, 197 N. W. 95) "was even a concurring element in the destruction of this [plaintiff's] property." We held that the evidence there left the plaintiff's case in the realm of speculation and conjecture largely for the reason that there were various fires extant over a large devastated region in which the plaintiff's property was located, and from the evidence it was impossible to point out and identify which fire or fires caused the plaintiff's loss. It is apparent from the record in that case that the inferences upon which the plaintiff relied did not preponderate over inconsistent inferences as established by the evidence.

The same observation may be applied to the facts in Swenson v. Erlandson, *supra,* upon which the defendant relies. There the plaintiff contended that his barn was destroyed as a result of fire from sparks and cinders given off by a threshing machine which passed his property on a damp, rainy evening six hours before the fire began. We were satisfied from the facts there that it would be almost impossible that sparks and cinders from the machine (86 Minn. 265, 90 N. W. 535) "could retain life for six hours, and during a period of such dampness as is shown by the evidence, and be the cause of the fire." The decision emphasizes  that the threshing machine from which the sparks and

cinders came was a "straw burner" and that sparks from such a machine "lose their life and vitality very soon after coming into the open air; and, if they could ignite a fire at all, it would necessarily be almost immediately after escaping from the engine, and not at a remote period of six hours thereafter."

Both parties rely on Silver v. Harbison, *supra*. In that case the defendants had started a campfire on bare ground 15 feet from inflammable material. After they thought the fire was extinguished and had left the area, the inflammable material became ignited. The evidence that they had actually extinguished the fire was considerably better than in this case. There was also evidence suggestive of other causes of the fire. We said, however (178 Minn. 274, 226 N. W. 933):

"Whether the question of the origin of the fire was one for the jury gives considerable trouble. It is a close one. From the best view we are able to get of the situation it was. If the fire was not put out it had only 15 feet to go before it would reach very inflammable material. * * * To those familiar with the progress of forest fires in such a cutover district in time of great drought, * * * it is easy to understand how a camp fire might pass an intervening space of 15 feet, containing nothing inflammable, and reach the inflammable material·beyond, * * *. Under the facts stated the law does not pronounce in favor of the defendants but leaves the issue to the determination of a jury cautiously guided by the trial court and with the result of its work subject to revision."

See, also, McCool v. Davis, 162 Minn. 281, 202 N. W. 900; Carr v. Davis, 159 Minn. 485, 199 N. W. 237; Hall v. Davis, 150 Minn. 35, 184 N. W. 25; Hippe v. Duluth Brewing & Malting Co. 240 Minn. 100, 59 N. W. (2d) 665.

We think Krippner v. Biebl, 28 Minn. 139, 9 N. W. 671, supports the view we take of the record before us. In that case the fire which was started in a field of grain stubble "jumped" a firebreak plowed around the field and spread over the prairie. Despite an attempt to extinguish it, it continued to smolder in the soil of a slough for two days when, without other intervening cause than an ordinary change in the direction and force of the wind, it became rekindled and ran to the plaintiff's property two miles from where it had originally started.

There we held that the defendant had been negligent in the setting and care of the fire, and the fact that it remained dormant in the slough did not excuse liability for the subsequent damage. We held that this liability existed even though the defendant might not have had reason to anticipate the smoldering and revival of the fire, nor did we think the injury was too remote to warrant recovery against him. We conclude from the foregoing that the court erred in granting the motion for a directed verdict.

■ The remaining assignments of error have to do with questions relating to the admissibility of the testimony of expert witnesses. A considerable portion of the record deals with offers, objections, and cross-examinations as to foundation for the purpose of making objections, and no purpose will be served by detailing the events of the trial which gave rise to the various rulings of the court. It is sufficient to say that the expert witnesses called by the plaintiff, who are employed by governmental agencies engaged in the control and prevention of fires and who have special knowledge and skill in that field, are qualified to testify with reference to factors which might assist the jury in reaching a correct conclusion from the facts in evidence. Of course, the credibility of such witnesses and the weight to be given their testimony is to be determined by the same rules used in determining the weight of other testimony.[2] Their testimony was, nevertheless, competent on the question of whether or not the house was destroyed by a fire from the outside; it was competent with reference to the behavior and characteristics of forest fires, the conditions which give rise to them, the conditions which may retard or accelerate the spread of fire, the propensity of the material on the forest floor to retain embers once a fire has been started, the conditions under which embers might remain dormant and later rekindle, all of which was within the knowledge, experience, and observation of such witnesses and which would be legitimately helpful to the jury in deciding the action. Krippner v. Biebl, *supra;* Davidson v. St. Paul, M. & M. Ry. Co. 34 Minn. 51, 24 N. W. 324.

The more important question relating to the admissibility of expert

---

[2] 7 Dunnell, Dig. (3 ed.) § 3324; State v. Gorman, 219 Minn. 162, 17 N. W. (2d) 42.

testimony, however, grows out of the action of the trial court in sustaining the defendant's objection to hypothetical questions submitted to expert witnesses by which the plaintiff sought to establish by the opinion of experts that the actual fire or fires allegedly set by the defendant actually resulted in the destruction of the plaintiff's home. The court sustained the defendant's objection that the answer to these questions related to an opinion on an ultimate fact to be decided by the jury. As we understand the contentions of the plaintiff, such testimony is admissible under Piche v. Halvorson, 199 Minn. 526, 272 N. W. 591, which holds in effect that experts are permitted to give their opinion upon the very issue which the jury will have to decide. See, also, Berg v. Ullevig, 244 Minn. 390, 70 N. W. (2d) 133.

In Woyak v. Konieske, 237 Minn. 213, 221, 54 N. W. (2d) 649, 654, 33 A. L. R. (2d) 1241, 1248, we pointed out that:

"Where the opinion of a witness is elicited, the proper test to determine his qualification is whether his knowledge of the matter in relation to which his opinion is sought is such that it will probably aid the trier of the question to determine the truth. * * *

"On the other hand, a witness called as an expert should not be permitted to express his opinion on a matter on which the opinion cannot aid the trier of facts in determining the truth of the fact issue. *If the jury is as competent to determine the fact issue as the expert, ordinarily his opinion will be of no assistance and should not be admitted.*" (Italics supplied.)

We think there is substantial merit to the defendant's objection. As we have pointed out, it was proper for the experts to testify with reference to the nature and effect of fire under prevailing conditions in the area at the time the damage occurred. It is quite another thing, however, for the expert to testify as to the issue of causation, which involves an evaluation of opinions with reference to prevailing conditions together with testimony of lay witnesses and a selection of inferences to be drawn from such testimony.

In view of the wide latitude of discretion which is given the trial court in the determination of the admission of expert testimony (7 Dunnell, Dig. [3 ed.] § 3325), we cannot say that the trial court erred

in sustaining the objections to the hypothetical questions. Once the jury had the benefit of testimony of expert witnesses with reference to the various factors which gave rise to the prevailing conditions, the jury was just as competent as the experts to determine the fact as to what caused the destruction of plaintiff's property. We agree that as to the question of causation the experts were not possessed of any particular specialized competence which the jury did not have. Tracey v. City of Minneapolis, 185 Minn. 380, 241 N. W. 390; Akin v. St. Croix Lbr. Co. 88 Minn. 119, 92 N. W. 537.

Reversed and new trial granted.