John A. MILLER, Zelma L. Miller, Jerry D. Miller and Suzanne Miller, by Zelma Miller, Her Next Friend, Respondents,

v.

Robert J. SABINSKE, Appellant.

No. 22927.

Kansas City Court of Appeals. Missouri.

April 6, 1959.

Francis G. Hale and Robert E. Coleberd, Liberty, for appellant.

Alan F. Wherritt and William J. Turpin, Liberty, for respondents.

HUNTER, Judge.

This is an action for damages to plaintiffs-respondents' trees, fence, corn crop and grass alleged to have been caused by the defendant-appellant, Robert J. Sabinske, setting a fire on his premises for the purpose of clearing his land of weeds, brush, and grass for residential development and negligently permitting the fire to spread to plaintiffs' adjoining land.

After trial and in accordance with the jury's verdict plaintiffs received judgment for $2,000 from which sum plaintiffs voluntarily remitted $517, leaving a reduced judgment of $1,483.

On this appeal the questions presented are: (1) Was a submissible case made

**944**

against defendant? (2) Was there reversible error in plaintiffs' instructions?

In order to determine the submissibility question we set out the substance of plaintiffs' evidence. Defendant did not offer any evidence.

Plaintiffs and defendant owned adjoining farm land in Clay County. Their farms were separated by an east and west fence. Defendant's land was north of the fence, and plaintiffs' land was south of it. Defendant had graded and staked out streets on his farm as a part of a housing development project, and had a lot of equipment and men continuing with that work.

In early September defendant had scraped off a strip approximately seven feet wide north of and along the fence line between the two farms, and had made a "windrow" of the scraped up weeds, grass and some dirt about 30 inches high and 30 inches wide. This "windrow" was interrupted by a ravine or gully which extended several hundred feet through both farms. The windrow stopped at each edge of the gully. The gully was so rough and deep the blading machine used to make the windrow was not used in it, and the gully on both sides of the fence was filled with dry weeds, grass and underbrush.

Defendant in early and middle September had been setting fire to brush and weeds on his tract of land. This had been going on for two or three weeks prior to September 20th. The one of September 20th was the only one close to plaintiffs' line.

On or about September 20, 1956, four employees of defendant cleared off brush on defendant's land and proceeded to set fire to it and burn it. The purpose of the work was to burn the high weeds on defendant's land so as to prepare the land for development as a subdivision. This September 20th fire got into the mentioned windrow and also to a very small extent got into plaintiffs' fence and land and caused some minor damage. Defendant's employees were at the scene putting it out.

One of the plaintiffs, John Miller, testified that after the fire of September 20, 1956, (Thursday) he went home that weekend.

"Q. Was there (then) any smoking or smoldering to your knowledge? A. I wasn't aware of it. I didn't see any."

Mrs. Zelma Miller, another of the plaintiffs, saw the smoke from the September 20th fire, drove to the scene "but they had it all out by that time". However, she further stated, "there were still some of defendant's workmen there". She was then asked,

"Q. What were they doing? A. Well, at that time they were still fighting it. They just about had it out, but they were fighing it * * *.

"Q. Was any of that windrow burning on the 20th when you were there that afternoon? A. Yes. It was. Yes."

C. W. Wright testified for plaintiff:

"A. They (defendant's workmen) had been doing some bulldozing in there, yes, and burning off some weeds and grass and stuff out there on the land north of that (of plaintiffs' farm).

"Q. That was prior to the 25th? A. Yes.

"Q. You could see the smoke. A. Oh, yes. I saw the smoke off and on there all evening."

It was extremely dry in September, 1956. A fire would burn over (even) bluegrass any time through that fall. The prevailing wind in September was from the south and southwest.

On September 25, 1956, about 4:30 p. m. it was discovered that a large fire was burning in the same general vicinity as that of September 20th. One of the first witnesses to arrive was C. W. Wright who stated that at the time of his arrival there was fire on each side of the draw, and fire in plaintiffs' cornfield and meadow. On the north side

of the division fence it was already burned off and was in the smoldering stage. The fire was still burning strong on the south side of that fence. By the time he and others put out the fire on the plaintiffs' side in the corn field it had ceased in the draw. The wind was from the northwest driving the fire to the southeast. That evening after the fire was put out elsewhere, he returned and turned over some of the "windrow". "There was fire down there, it would burn your hand, you couldn't put your hand down there. So Mr. Miller brought us some pitchforks and we turned that dirt over and watered it with a hose, water hose. * * * It had been windrowed with a bulldozer, but it was burning under it, * * * Did that lead right up to the gully or ravine? Yes."

Plaintiffs' witness, Ralph Wilson, was one of the firemen who helped extinguish the fire. On his arrival he observed that the fire had been north of the division fence on defendant's land, where most of it "was burnt off" but was still smoking for 150 yards along the windrow. That part of the ravine on defendant's land was burned off, and still smoking, but that part of it on plaintiffs' land was still burning. There was fire all along the fence. Plaintiffs' corn field was on fire. The wind was blowing from the northwest to the southeast. The fire had already "burnt out on the north side" and "it was going to the south then."

John Miller testified that on his arrival at the scene there were no spots on defendant's side of the fence that weren't burned but there were some on plaintiffs' side between the burned area and the fence that were not burned.

"Q. And there were spots burned on both the north and south side of the fence? A. Yes, sir.

"Q. Linking the two together. A. Yes, sir."

Some of defendant's employees were at the scene of the September 25th fire but did not participate with the firemen or others in the endeavor made to extinguish it.

The jury was shown fourteen colored slide pictures of the scene of the fire taken shortly after it occurred. These pictures included such things as the burned fence, trees, corn and bluegrass, the mentioned gully, the bladed area and a portion of the windrow location.

We turn to the testimony concerning the damage from the fire.

The corn crop was matured and ready to harvest. Corn from the undamaged portion of the field was sold for $1.34 a bushel. A little over two acres was destroyed by the fire. The average yield was 75 bushels to the acre. The damage according to plaintiffs' witness was "$210.00 up or down a few cents."

The black locust trees in the burned area died from the ground up completely. The net value of the trees before they were completely burned was $250.

135 fence posts were burned completely off. They were worth $1 each. Labor to replace the fence that had been burned out would cost $600. The fire destroyed the galvanized part of much of the fence. It would cost $125 for replacement wire, and allowing $25 for depreciation made an actual damage to the wire of $100. A fence gate of $20 value was destroyed.

As to the bluegrass, John Miller testified, "again by measurement there was one acre, very slightly over, that was burned over that had already been contracted to be sold for sod." Miller volunteered the sod was under contract to be sold at $150 an acre. On objection this voluntary statement was stricken. He then was asked,

"Q. Mr. Miller, what in your opinion was the value of the bluegrass that was burned? A. $150.00 an acre."

He testified that three-tenths of an acre of other grass was destroyed of a value of

$18. He paid the fire department $25 for its services.

Appellant's first point is that no submissible case was made because (1) The evidence did not show the origin of the September 25, 1956, fire; (2) Plaintiffs' evidence shows that the fire started by defendant on September 20, 1956, had been put out on that date; (3) Plaintiffs' evidence fails to show that defendant had any connection with the September 25, 1956, fire; (4) And further fails to show any connection between the fires of September 20, 1956, and that of September 25, 1956; and fails to show any act of defendant on September 25, 1956, which would show that he set the fire on that date. We limit ourselves on this appeal to these contentions.

■ In ruling on the question of whether the evidence made a submissible case for the jury the appellate court must take as true every fact and circumstance favorable to plaintiffs which the evidence tends to prove, and give to plaintiffs the benefit of all reasonable inferences which may be fairly drawn therefrom. Capra v. Phillips Investment Co., en Banc, Mo., 302 S.W.2d 924; Sibert v. Boger, Mo.Sup., 260 S.W.2d 569.

This case involves the question of liability for the alleged spread of a fire causing damages to another where the fire has been knowingly and purposefully set for a legitimate purpose on defendant's premises by his employees acting within the scope of their employment.

■ The rule is that when an owner of property sets a fire on his own premises for a lawful purpose, and not in violation of any statute, he is not, in the absence of a statute to the contrary, liable for damages caused by the spread of the fire to the property of another unless he was negligent in starting or negligent in controlling the fire. Steffens v. Fisher, 161 Mo.App. 386, 143 S.W. 1101; Belk v. Stewart, 160 Mo.App. 706, 142 S.W. 485; Annotation,

Fire—Liability For Spread, 24 A.L.R.2d 241, 254.

■ Affirmatively stated, ordinary care is the measure of diligence required to free oneself from liability for the spread of a fire lawfully set on one's premises. Ordinary care, in this connection, has been defined as such care, caution and diligence as a prudent and reasonable man would exercise, under the circumstances, to prevent damage to others. 22 Am.Jur., Fires, Sec. 16, page 605; Annotation, Fire—Liability For Spread, 24 A.L.R.2d 259; Steffens v. Fisher, supra.

■ What amounts to ordinary care depends upon the particular circumstances and is generally a question of fact unless the evidence is such that reasonable men could not infer negligence therefrom. Willard v. Bethurem, Mo.App., 234 S.W.2d 18; Jansen v. Aholt, Mo.App., 189 S.W.2d 121.

■ As in non-fire cases, an essential issue may be established by circumstantial evidence as well as by direct evidence. Proof by circumstantial evidence, as the term is usually understood, merely means that the proof of some of the necessary and principal facts must come, if at all, from proof of surrounding conditions from which the existence of the principal fact may be reasonably deduced. The circumstantial evidence while not directly proving the existence of the fact must give rise to a logical inference that it exists. See, 31 C.J.S. Evidence § 161, p. 871; Vinson v. East Texas Motor Freight Lines, Mo. Sup., 280 S.W.2d 124, 129.

■ Since there was no eyewitness as to how the fire on plaintiffs' premises occurred, the circumstantial evidence must be sufficiently strong to indicate to reasonable minds the source and cause of the fire and defendant's responsibility therefor and not leave those questions to mere conjecture, guesswork or speculation. The evidence should reasonably eliminate the probability of any other source and cause.

Motley v. Wabash Railroad Co., Mo.App., 234 S.W.2d 321; Niswonger v. Thompson, Mo.App., 124 S.W.2d 669. Each case must be ruled according to its own particular facts.

The evidence before us reveals a chain of circumstances which to our minds furnishes a reasonable basis for inference by the jury that the fire which defendant through his employees started on September 20, 1956, continued to smolder until September 25, when aided by wind from the north it caused unburned material to flame up and burn on down the inflammable windrow into the ravine filled with underbrush, weeds and grass, and again travelling with the wind to move onto plaintiffs' land where it caused damage. The evidence also indicated that fire from the windrow in spots crossed over to the dividing fence and continued onto plaintiffs' land.

■ Matters of common knowledge and experience may be used by jurors in drawing inferences and reaching conclusions from the evidence. 89 C.J.S. Trial § 463 (b), p. 99; Miller v. Hotel Savoy Co., 228 Mo.App. 463, 68 S.W.2d 929, 53 Am.Jur., Trial, Sec. 913, page 656. A reasonable inference from the facts is that the windrow which obviously had been burning on September 25th, had never been fully free of fire and smoldering from the September 20th fire, had flared up, and aided by the wind and the described terrain travelled onto plaintiffs' land. Fireman Wilson on arrival at the scene observed that the windrow "was burnt off" but was still smoking for 150 yards along the windrow. Other evidence indicated that the fire had come from that vicinity of defendant's land and aided by the wind had spread to plaintiffs' land. The nature and content of the windrow was such that lurking fire or "smoldering" could exist without being easily seen. Witness Wright described how he turned over the windrow to expose "the fire down there" that would burn your hand, and of using water to aid in completely extinguishing it. The situation is somewhat similar to that described in Erickson v. Strickler, 252 Minn. 351, 90 N.W.2d 232, wherein defendant in order to clear his land started a brush fire thereon which he believed he had then extinguished. Eleven days later his adjoining neighbors' home was destroyed by fire. Defendant contended that plaintiff failed to trace and identify the fire started by defendant as the one that damaged plaintiff's property. In reviewing the evidence and holding that a submissible case had been made the court said, 90 N.W.2d loc. cit. 238:

"We are of the view that at the time the motion for a directed verdict was made, the record contained evidence from which the jury might reasonably infer that the fire originated on the defendant's land rather than on the plaintiff's property; that without further explanation on the part of the defendant the evidence supported inferences that the fire started by the defendant on October 5 may not have been adequately extinguished; that from the evidence with relation to ash spots observed by the plaintiff and his wife on October 11, the jury might draw inferences that the defendant, who had been engaged in a project of clearing and burning brush on this property at various times before and after October 11, had knowledge of the existence of fire upon his premises which might create a hazard to others, State v. Phillips, 176 Minn. 472, 223 N.W. 912; Farrell v. Minneapolis & R. R. R. Co., 121 Minn. 357, 141 N.W. 491, 45 L.R.A.,N.S., 215; 22 Am.Jur., Fires, § 13; and in light of the prevailing conditions the jury could draw inferences as to whether or not the fire could have traveled to the plaintiff's property either through the humus or by sparks from embers awakened by the wind.

\*    \*    \*    \*    \*    \*

"We think Krippner v. Biebl, 28 Minn. 139, 9 N.W. 671, supports the view we take of the record before us. In that case the fire which was started in a field of grain stubble 'jumped' a firebreak plowed around the field and spread over the prairie. Despite an attempt to extinguish it, it con-

tinued to smolder in the soil of a slough for two days when, without other intervening cause than an ordinary change in the direction and force of the wind, it became rekindled and ran to the plaintiff's property two miles from where it had originally started. There we held that the defendant had been negligent in the setting and care of the fire, and the fact that it remained dormant in the slough did not excuse liability for the subsequent damage."

Plaintiffs' case was not destroyed because one plaintiff, John Miller, on a week-end visit to the scene between September 20, and September 25th, didn't see smoldering or wasn't aware of any. Other evidence indicated the smoldering might not be visible without careful examination or without turning over the windrow so as to expose its bottom portion. The effect of this plaintiff's testimony in view of all the evidence was properly for the jury's consideration.

■ We rule that a submissible jury case was made by plaintiffs and that the trial court did not err in refusing to grant defendant's motion for a directed verdict at the close of plaintiffs' case. Cf. Belk v. Stewart, supra; Steffens v. Fisher, supra.

Defendant's second point attacks the legal correctness of the measure of damage instruction given on behalf of plaintiffs. Paragraph three thereof provided: "The court instructs the jury that if they find and believe from the evidence that any corn and grass of the plaintiffs was destroyed by the fire described in evidence, and caused by the negligence of the defendant, if so, then the measure of damages is the value of said corn and grass at the time of the fire."

■ With reference to the corn destroyed, plaintiffs' evidence is that the corn, an annual crop, was fully matured and ready for harvesting; that there were about two acres destroyed; that the average yield was 75 bushels to the acre; that corn sold on the market that fall at $1.34 a bushel;

and that *after harvesting* corn from the unburned portion of the field was sold for $1.34 a bushel with the buyer taking delivery at the farm. On this basis, the plaintiffs testified that the value of the corn destroyed was approximately $210. This is not the approved *method* of establishing the value of a destroyed annual crop. The rule in this state, and in most jurisdictions, is that the *measure* of damages ordinarily applicable to the total destruction of a growing crop is the value of the crop at the time and place of destruction. Happy v. Kenton, 362 Mo. 1156, 247 S.W.2d 698, 705; 175 A.L.R., Sec. 3, page 162. However, the generally accepted *method* of arriving at the value of the crop at the time of its destruction is: First, to estimate the probable yield had the crop not been destroyed; second, calculate the value of that yield in the market; and third, deduct the value and amount of labor and expense which subsequent to the destruction, and but for it, would have been required to mature, care for and market the crop. Happy v. Kenton, supra; 175 A.L.R., Sec. 12, page 174.

■ Plaintiffs' evidence did not follow this method of proving the value of the corn at the time of destruction. It completely failed to take into consideration the cost of harvesting the matured crop. Consequently, there was no competent evidence to support the giving of a general instruction on the measure of damage to the corn.

■ This error cannot be corrected by holding, as was done in the Happy case (247 S.W.2d 705), that if the defendant wished an instruction clarifying, limiting, or detailing the elements of plaintiffs' damages, or further directing the jury as to the method of estimating them, it was the duty of the defendant to have requested such additional instruction; because there was no evidence of the cost of harvesting and marketing the corn, as there was in the Happy case, to support the giving of such a clarifying instruction. See Beaty v. N. W. Electric Power Co-operative, Mo.

App., 296 S.W.2d 921, 924, 926. For this error, the case must be retried as to damages.

In passing, we note plaintiffs' instruction concerning the damage to the corn does not clearly state that it is the value of the corn *as it stood in the field* at the time of its destruction that is to be determined. On retrial the correct measure of damages should be clearly stated in the instructions.

Bluegrass is a perennial crop. This court recently has had occasion to review the rules for measuring damages resulting from its total destruction. In Beaty v. N. W. Electric Power Cooperative, Inc., Mo.App., 312 S.W.2d 369, 372, it was said: " * * * this court in a number of opinions held that the measure of such damage was the reasonable rental of the area destroyed, and the reasonable cost of reseeding. * * * And the supreme court held that the view taken by this court was the proper one. See Couch (Crouch) v. Kansas City Southern R. Co., 252 Mo. 34, 158 S.W. 347, 46 L.R.A.,N.S., 555." Cf. Faire v. Burke, 363 Mo. 562, 252 S.W.2d 289.

Thus the correct measure of damages for the destroyed grass is the reasonable rental of the area destroyed and (plus) the reasonable cost of reseeding, and not "the value of * * * the grass at the time of the fire." This portion of the instruction was an incorrect statement of the measure of damages.

Additionally, there was no evidence adduced as to the reasonable rental of the area destroyed nor of the reasonable cost of reseeding. The jury after hearing that the bluegrass sod was under contract for sale for $150 an acre, to which an objection was sustained, was told by Witness Miller merely that the value of the bluegrass that was burned was $150. The misdirection contained in the instruction that was given, and the lack of evidence to support a correct instruction were prejudicial

in their effect, and require a correct redetermination of the damages.

There was also testimony that 3/10ths of an acre of "other grass" burned. The only evidence concerning its value was "Q. What (Mr. Miller) in your opinion was the value of that? A. $18.00." On retrial, both the new instruction and the evidence necessary to support it should be considered in the light of the requirements of the Beaty case and other applicable authority.

What we have said is based on a *total* destruction of the burned grasses, *including their roots,* as apparently respondents contend. If the roots were not destroyed there would, of course, be no need for reseeding, and a different measure of damages would be called for. In no event would that value be measured by its value as bluegrass sod under contract for sale. It is common knowledge that several inches of valuable topsoil are included in the sale of sod whereas there is no destruction of topsoil by burning grass. Further, there is no evidence of loss of a seed crop for one year as in the Beaty case, where the measure of damages included that loss and permitted its recovery also.

Appellant also contends that other portions of the instruction stating the measure of damages as to the trees and fence destroyed by the fire were erroneous. Both sides have carefully briefed that subject. Since it is quite unlikely that on a retrial there will be any problem in formulating a correct instruction further discussion of the subject is unnecessary. See, Beaty v. N. W. Electric Power Co-op, Inc., supra, 312 S.W.2d loc. cit. 371.

Appellant contends Instruction No. 1, the verdict directing instruction, failed to require the jury to find that plaintiffs were the owner of the farm (but assumed it was a fact). During the trial plaintiffs' counsel asked, "May it be admitted, gentlemen, that the ownership of the land, so-called Miller land, is jointly

in Zelma Miller, John Miller and Jerry D. Miller." Appellant's counsel replied, "Whatever the deed shows. Why not put it in evidence." The deed was then introduced in evidence. No contention is made that it does not show plaintiffs were the owners of the mentioned farm. Further, throughout the trial both sides treated plaintiffs as the owners. It is our view that appellant's statement and conduct were an admission that plaintiffs were the owners of the farm. Instructions should not assume controverted facts. However, there was no controversy or real issue concerning the ownership of the farm by plaintiffs, and it is not error to assume in an instruction a fact established by undisputed evidence and concerning which there is no real issue or which is conceded. See, Banks v. Koogler, Mo.Sup., 291 S.W.2d 883, 891; Morris v. Equitable Assur. Soc. of United States, 340 Mo. 709, 102 S.W.2d 569; McCallum v. Executive Aircraft Co., Mo.App., 291 S.W.2d 650, 656.

Appellant's next point is that Instruction No. 1 states the fire which caused plaintiffs' damage was set September 25, 1956, by defendant yet the instruction requires the jury to find the fire that was lighted by defendant September 20, 1956, caused plaintiffs' damage, and that the latter is beyond the scope of the petition and the evidence.

■■■ In determining whether an instruction is supported by the evidence the reviewing court must view the evidence in the light most favorable to the party at whose instance and request the instruction was given. Palmer v. Lasswell, Mo. Sup., 287 S.W.2d 822, Ferguson v. Betterton, 364 Mo. 997, 270 S.W.2d 756, Banks v. Koogler, supra.

As previously indicated the evidence of Mr. Miller was merely to the effect that on September 20, 1956, the fire insofar as he knew was *apparently* under control. There was sufficient evidence to support a finding by the jury that the fire of September 20th, as provided in Instruction No. 1, "continued to burn and smolder in wind-rows and later spread to the lands of plaintiffs * * *." While it is true that the petition stated "that defendants * * * on *or about* September 25, 1956, set fire to grass and brush on the tract * * *" it is clear from plaintiffs' interrogatories and defendant's answers thereto that it was the fire later identified by all parties as having been set by defendant's employees on September 20, 1956, that was being referred to. There was no evidence of any other fire near plaintiffs' land *on or about* that date. (Italics ours.) Both sides understood that this was the fire in controversy. We find no merit in appellant's contention.

■ Appellant's last contention concerning Instruction No. 1 is that the required finding that "defendant, his agents or employees carelessly and negligently managed said fire" gave the jury a roving commission to speculate as to what would constitute such negligent management, and was not pleaded or supported by the evidence. We do not find that the first amended petition on which the case was tried contained the referred to words. It did allege that after setting a fire on their own land to clear it " * * * defendant * * * (his) agents and employees failed to control and confine the fire to the tract owned by the defendant and negligently and carelessly permitted the fire to spread to the tract owned by plaintiffs * * *."

Instruction No. 4 instructed the jury that the term "negligence" as used in the instructions meant the want of that degree of care that any ordinary prudent person would have exercised under the same or similar circumstances. Instruction No. 5 instructed the jury that negligence is not presumed under the law but must be established by a preponderance of all the credible evidence in the case, and that unless the jury is unable to determine whether or not defendant was negligent without resort to speculation, guess, conjecture and surmise its verdict must be for defendant.

We believe Instruction No. 1 was sufficient in the criticized respect so as *not* to be erroneous, and if defendant felt the term "negligence" needed additional definition it should have offered an instruction for that purpose. See cases cited, 27 Mo.Digest, Trial, ⊜255(13). Further the evidence adduced was sufficient to support and authorize the giving of the instruction. No useful purpose would be served in again reviewing it.

Having found that no prejudicial error occurred with reference to the determination of the question of defendant's liability but that reversible error was committed with reference to the measure of damages, we reverse and remand this cause for a new trial on the issue of damages only. It is so ordered.

All concur.